**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|                              |     |                                      |
| ---------------------------- | :-: | ------------------------------------ |
|                              |  :  |                                      |
| QUAME HERD,                  |  :  |                                      |
|                              |  :  | Civil Action No. 21-10482 (SDW)      |
| Petitioner,                  |  :  |                                      |
|                              |  :  |                                      |
| v.                           |  :  | **OPINION**                          |
|                              |  :  |                                      |
| UNITED STATES OF AMERICA,    |  :  |                                      |
|                              |  :  |                                      |
| Respondent.                  |  :  |                                      |
|                              |  :  |                                      |

**WIGENTON**, District Judge:

Presently before the Court is Petitioner Quame Herd's amended motion to vacate, set aside or correct sentence brought pursuant to 28 U.S.C. § 2255, challenging his criminal conviction and sentence in *Untied States v. Herd*, Criminal Action No. 18-596 (D.N.J.) (hereafter "Crim. No. 18-596") (ECF No. 7).   The Government filed an answer to the amended motion (ECF No. 13), and Petitioner filed a reply brief.   (ECF No. 14).   This Court has determined, for the reasons discussed below, that no evidentiary hearing is required   Therefore, this Court will determine the § 2255 motion on the briefs pursuant to Federal Rule of Civil Procedure 78(b).

## I.  BACKGROUND

On October 4, 2018, Herd, represented by court-appointed counsel, Michael J. Pappa, Esq. ("Pappa"), pleaded guilty to an Information charging him with knowingly and intentionally distributing and possessing with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).   (Crim. No. 18-596, ECF Nos. 19, 21, 23.)   The plea agreement contains a stipulation that the parties did "not agree as to whether Herd qualifies as a career offender for purposes of U.S.S.G. § 4B1.1" and "reserve[d] the right to argue their respective positions at

sentencing." (Crim. No. 18-596, ECF No. 23 at 8.) The plea agreement also contains the following limited appellate waiver:

> if the sentencing court accepts the factual stipulations set forth above, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so. Otherwise, both parties reserve the right to file, oppose, or take any position in any appeal, collateral attack, or proceeding involving post-sentencing motions or writs.

(*Id.*)

In a plea hearing before this Court, Herd confirmed that he "had a complete opportunity to speak with [his] attorney, Mr. Pappa, regarding [his] rights in this matter[.]" (ECF No. 13-1 at 5-6). This Court discussed the stipulations of the plea agreement with Herd:

> In Paragraph 2, it indicates that you and Mr. Pappa, on your behalf, reserve the right to argue that you are not a career offender. Do you recall that?
>
> Yes.
>
> The Government is obviously going to potentially argue that you are a career offender, but you are reserving your right to argue that you do not fall under a career offender status? Do you understand that?
>
> Yes.   Thank you.

(*Id.* at 11-12).

In a Presentence Investigation Report ("PSR"), the U.S. Probation Department ("Probation") identified the following four predicate drug offenses that established Herd as a career offender under the Sentencing Guidelines. (PSR, ¶¶ 64, 66, 68, 69).[1] In 2009, Herd was convicted on two separate occasions in New Jersey Superior Court, Essex County, for "distribution

---

[1] The PSR is confidential and does not appear on the docket. *United States v. Blanco*, 884 F.2d 1577, 1578 (3d Cir.1989) ("there is a general presumption that the courts will not grant third parties access to the presentence investigation reports of other individuals").

on or within 1,000 feet of a school."  (PSR, ¶¶ 64, 66).   In 2012, Herd was convicted in the New Jersey Superior Court, Essex County for "Possession/Distribution/Manufacturing/ Dispensing of CDS/ New Jersey Superior Court, Essex County."  (PSR ¶¶ 68, 69).   According to the PSR, Herd's prior convictions resulted in 17 criminal history points, placing him in Criminal History Category VI, before application of U.S.S.G. § 4B1.1.   (PSR, ¶ 74).   Herd's career offender status increased his base offense level from 12 to 32, resulting in an offense level of 29, after the three-level reduction for acceptance of responsibility.  (PSR, ¶¶ 53-62).   Therefore, Herd's advisory Guidelines range was 151 to 188 months.   (PSR, ¶ 115).

Herd was sentenced on February 19, 2019.   (ECF No. 13-2).   At the sentencing hearing, Pappa conceded that Herd was a career offender but argued that the Court should impose a sentence below the Guidelines range because Herd was only a street dealer.   (*Id.* at 6-7).   Pappa also emphasized Herd's very difficult childhood, and stressed the fact that Herd had been trying to turn his life around in recent years by completing a drug treatment program.   (*Id.* at 9-10).   Pappa pointed to the disparity in the sentence Herd would have faced in state court for the same crime and recommended a 72-month period of incarceration.   (*Id.* at 11-13).   In turn, the Government argued that Herd was a career offender and should be sentenced according to his serious criminal history and the need for specific deterrence.   (*Id*. at 18-19).

At sentencing, this Court adopted the Guidelines calculations in the PSR, and agreed that Herd was a career offender.   (*Id.* at 20).   Based on the need to protect the public, provide just punishment, deterrence, and to avoid unwarranted federal sentencing disparities, this Court determined that a 151-month term of imprisonment, the bottom of the advisory Guidelines range, was the appropriate sentence.   (*Id.* at 21-26).   Herd appealed, challenging the sentence on the

3

grounds that it was substantively unreasonable in light of Herd's particular circumstances.   (ECF No. 13-3 at 19).   In response, the Government pointed to Herd's recidivism, reflected by his 17 criminal history points.   (ECF No. 13-4 at 16-17).   The Third Circuit affirmed Herd's sentence on January 27, 2020, holding that:

> [t]he nature of the offense, Herd's extensive criminal history, his likelihood of recidivism, the interest in protecting society from future crimes, and the value of deterring criminal conduct—factors considered by the District Court in sentencing Herd—all prevent Herd from meeting . . .

the heavy burden to establish that his sentence was unreasonable.   *United States v. Herd*, 791 F. App'x 287, 288 (3d Cir. 2020).

Herd raises the following three claims in his amended § 2255 motion.   First, he asserts that "Former Counsel Michael Pappa was constitutionally ineffective by advising [him] not to accept" the same plea offer that his co-defendant accepted during his arraignment, without a career offender enhancement.   (ECF No. 7 at 16).   Second, Herd claims that Pappa was ineffective by failing to challenge Herd's career offender status at sentencing.   (*Id.*)   Herd alleges that Pappa told him no one had been able to obtain police reports for Herd's underlying predicate offenses. (*Id.* at 32).   Therefore, Herd asserts that he was erroneously designated as a career offender without *Shepard* documents.[2]   (*Id.*)

---

[2] "[T]the Supreme Court explained that when a statute is "divisible"—i.e., "comprises multiple, alternative versions of the crime"—a sentencing court may look to a limited class of extra-statutory documents to determine which version of the offense was the basis of conviction." *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014), as amended (Nov. 4, 2014).   The extra-statutory documents are often referred to as "Shepard documents." *See e.g.*, *United States v. Volek*, 796 F. App'x 123, 125 (3d Cir. 2019) ("The modified categorical approach permits courts to consult a limited number of *Shepard* documents to determine which elements formed the basis of a prior conviction.")

Herd further claims that none of his prior state convictions are controlled substance offenses under U.S.S.G. §§ 4B1.1 and 4B1.2(b).   (ECF No. 7 at 32).   Herd submits that his prior New Jersey convictions used as predicate offenses for application of the career offender guideline fell under NJS 2C:35-5(a) and NJS 2C:35-7(a).   (*Id.* at 38).   Herd alleges that Pappa conceded in his sentencing memorandum that Herd had two prior felony convictions involving drug offenses, but Pappa failed to examine whether the federal statute and state statutes of conviction were a categorical match.   (*Id.* at 34).   Herd suggests three reasons why possession with intent to distribute ("PWID") under New Jersey law is not a categorical match to U.S.S.G. § 4B1.2(b):   (1) "the mens rea for a PWID offense in New Jersey does not require an actual intent to distribute;" (2) the State of New Jersey defines controlled substances to include controlled substance analog and the federal statute does not; and (3) Herd's prior state offenses of conviction are broader than § 4B1.2(b) because the New Jersey statutes include three drugs that are not included in the Federal Controlled Substance Act.   (*Id.* at 34-35).   Herd submits that without the *Shepard* documents, Pappa could not have determined whether Herd was charged with the requisite subjective intent to distribute controlled substances.   (*Id.* at 38).

For his third claim of ineffective assistance of counsel, Herd asserts that his appellate counsel, Jeffery Zajac, was constitutionally ineffective by failing to challenge Herd's career offender status on direct appeal.   (*Id.*)   The Government submits that Pappa's firm hired Zajac, an independent contractor, to conduct legal research and assist with drafting the brief.   (ECF No. 13 at 14, n. 3 citing Ex. E at 6.)   Therefore, this Court will construe the appellate ineffective assistance of counsel claim as directed against Zajac and Pappa.   The Government opposes relief based on procedural default of the sentencing claim and on the merits of the ineffective assistance

of counsel claims.   (ECF No. 13 at 10-22).

## II.   DISCUSSION

### A.   Legal Standard for Claims Under 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255(a),

> a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]"

*United States v. Folk*, 954 F.3d 597, 601 (3d Cir.), ‗ *cert. denied*, 141 S. Ct. 837 (2020) (quoting 28 U.S.C. § 2255(a)).   When such a motion is filed, "[a] District court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Scripps*, 961 F.3d 626, 631–32 (3d Cir. 2020) (citing *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005) (quoting 28 U.S.C. § 2255) (alteration in original)).

### B.   Procedural Default

A defendant procedurally defaults a claim by failing to raise it on direct appeal.   *Bousley v. United States*, 523 U.S. 614, 622 (1998).   When this occurs, "the claim may be raised in habeas only if the defendant can first demonstrate cause and actual prejudice … or actual innocence"   *Id.* (internal quotations and citations omitted).

The Government submits that Herd may not use § 2255 to challenge his career offender designation because he procedurally defaulted the claim by failing to raise it on direct appeal. (ECF No. 13 at 11).   Herd does not dispute that he failed to challenge his career offender designation on direct appeal, but he asserts that his appellate counsel's failure to raise the

ineffective assistance of trial counsel claim provides cause to excuse his procedural default, with prejudice resulting from a significantly longer sentence with an erroneous career offender enhancement.   (ECF No. 14 at 3-4).

Herd alleged that "everyone proceeded on the false assumption that Mr. Herd was a career offender."  (ECF No. 7 at 42.)   This Court, however, construes the amended motion as raising only the ineffective assistance of counsel claims described in grounds one, two and three of the amended § 2255 motion.   (*Id.* at 5, 6 and 8.)[3]   It is well-recognized that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003); *U.S. v. DeRewal*, 10 F.3d 100, 104 (3d Cir. 1993) (holding the petitioner was not required to show cause and prejudice "with respect to his failure to raise ineffective assistance of counsel claim on direct appeal"). Therefore, Herd's ineffective assistance of counsel claims are not procedurally defaulted, and this Court will address the merits of Herd's claims.

C.      **Ineffective Assistance of Counsel at Plea Stage**

For his first ineffective assistance of counsel claim, Herd contends Pappa advised him to reject a plea offer where the Government would not seek to impose a career offender sentence

---

[3] In his reply brief, Herd alternatively seeks to challenge the imposition of career offender status by this Court based on the "novel rule," which permits defendants to raise claims in a § 2255 motion that were "too new to have been foreseen" on direct appeal.  (ECF No. 14 at 6).   This avenue of relief is foreclosed by the Third Circuit's holding that "a nonconstitutional claim based on an incorrect career-offender enhancement under the advisory Guidelines is not cognizable under § 2255."  *Folk*, 954 F.3d at 609.   On the other hand, Herd's ineffective assistance of counsel claims are not foreclosed because they are constitutional claims under the Sixth Amendment.  *See e.g., United States v. Dominguez-Rivera, 810 F. App'x 110, 112-14 (3d Cir. 2020*) (finding a Sixth Amendment violation where counsel failed to cite readily available, relevant case law that suggested the petitioner's conviction was not a predicate offense, and likely resulted in an incorrect Guidelines calculation with a career offender enhancement.)

enhancement, and this resulted in Herd getting a longer sentence than his co-defendant who accepted such an offer.   (ECF No. 7 at 5, 16).   Herd submits that he was prejudiced because his Guidelines range would have been 33-37 months without the career offender enhancement.   (*Id.* at 26.)   Instead, he was sentenced to 151 months.   (*Id.*)   The Government responds that Herd was never offered the same plea deal as his co-defendant.   (ECF No. 13 at 22).   Pappa confirmed this in a sworn declaration under 28 U.S.C. § 1746.   (ECF No. 13-5).   In his reply brief, Herd does not contest Pappa's sworn statement that the Government only offered Herd one plea deal, the offer that Herd accepted.   (ECF No. 14).   Instead, Herd argued in reply that "Pappa did not remove the possibility of the career enhancement during plea negotiations because he had done no due diligence to understand the legal requirements necessary for prior state convictions to be used as predicate offenses."   (*Id.* at 8-9).   Herd also disputed any prospective argument that he agreed to "table" the career offender issue until sentencing, stating that he "instinctively believed he was **not** a career offender" and relied on Pappa to find a legal basis to support his belief.   (*Id.* at 9) (emphasis in original).

The Supreme Court has recognized that the right to counsel under the Sixth Amendment is the right to effective assistance of counsel.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction … has two components."   *Strickland*, 466 U.S. at 687.   The first component requires a defendant to show that counsel's performance was deficient.   *Id.*   Thus, a defendant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.* This showing can be made where "counsel's representation fell below an objective standard of reasonableness."   *Id.* at 687-88.

8

Courts must take into account all of the circumstances present to determine whether a counsel's performance was reasonable. *Strickland*, 466 U.S. at 688.

The second component of a Sixth Amendment ineffective assistance of counsel claim is that the defendant was prejudiced by counsel's deficient performance. *Id.* at 691-92. In the guilty plea context, when a petitioner challenges his sentence on the basis of ineffective assistance of counsel, the petitioner must show that "but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005.)

The record before this Court conclusively establishes that Herd was never offered the same plea deal as his co-defendant. Notably, Herd did not submit a sworn affidavit with his amended § 2255 motion in support of his allegation that Pappa advised him to reject a plea offer similar to that received by his co-defendant, without a career offender sentence enhancement. In answer to the § 2255 motion, the Government denied having ever made Herd a plea offer to sentencing without a career offender enhancement. (ECF No. 13 at 22). The Government also submitted the sworn declaration of Michael J. Pappa, Esq., stating:

> On or about July 26, 2018, the Government sent me a plea offer containing a stipulation that the parties did not agree as to whether Mr. Herd qualified as a career offender and that each party reserved its right to argue at sentencing that he did or did not qualify. That was the only offer I received and the plea agreement that Mr. Herd ultimately signed.
>
> Mr. Herd complains in this § 2255 motion that I failed to advise him to take an earlier plea offer that did not have a career offender enhancement. No such earlier plea offer exists. …

(ECF No. 13-5 at 4, ¶¶ 9, 10).

9

In his reply brief, Herd did not directly respond to the Government's assertion that a plea offer without a career offender sentence enhancement was never extended to him.   (ECF No. 14). Instead, Herd altered his claim and argued that Pappa lacked the requisite knowledge and skill to challenge his career offender enhancement at the plea stage.   Therefore, the record conclusively establishes that Pappa did not advise Herd to reject a more favorable plea offer.   Moreover, at the plea stage, Pappa advised Herd to accept a plea that permitted him to challenge his career offender status at sentencing, leaving open the possibility of a lower Guidelines range than was ultimately established at sentencing.   Herd has failed to establish that Pappa's performance at the plea stage was deficient.   Thus, this Court denies ground one of the amended § 2255 motion.

### D.    Ineffective Assistance of Counsel at Sentencing

#### 1.    The Parties' Arguments

In ground two of the amended § 2255 motion, Herd alleges Pappa provided ineffective assistance at sentencing by failing to challenge Herd's career offender status.   (ECF No. 7 at 6). Herd submits that, during his plea, Pappa "acknowledged that he would order the police reports and sentencing transcripts from the alleged state predicate offenses" to allow him to challenge the career offender designation.   (*Id.*)   According to Herd, no one obtained the "Shepard documents"[4] necessary to determine whether his predicate offenses made him eligible for career offender status.   (*Id.*)   Further, Pappa did not object to the application of the career offender guideline in the Presentence Investigation Report ("PSR") and conceded at sentencing that the career offender guideline was applicable.   (*Id.* at 31-32).

---

[4] *See, supra* n. 2.

Herd claims his prior convictions are not "controlled substance offenses" within the meaning of U.S.S.G. § 4B1.1 and § 4B1.2(b). (ECF No. 7 at 32). Specifically, he asserts that his convictions for possession of controlled dangerous substances with intent to distribute ("PWID") are not predicate offenses because: (1) New Jersey does not require actual subjective intent to distribute; (2) the State of New Jersey defined "controlled dangerous substance" to include controlled substance analog; (3) the New Jersey statutes of conviction are broader than the federal statute because they include three drugs that are not included in the Federal Controlled Substance Act. (*Id.* at 35, 38). Herd submits that his relevant prior state convictions fell under N.J.S. 2C:35-5(a) and N.J.S. 2C:35-7(a). (*Id.* at 38).

In opposition to Herd's claims, the Government advances two arguments: 1) that counsel made a reasonable strategic decision not to challenge the career offender enhancement because Herd had four potentially qualifying predicate controlled substance offenses and only two were required for career offender status; and 2) that counsel was not deficient by failing to raise a meritless argument that Herd did not qualify as a career offender. (ECF No. 13 at 23-26).

In his reply brief, Herd maintains that Pappa's performance was deficient because: 1) Supreme Court precedent existed that allowed Pappa to challenge the predicate offenses; 2) if Pappa had investigated the New Jersey statutes, he would have discovered they are too broad to be used as predicate offenses; and 3) if Pappa had investigated the New Jersey statutes, he would have discovered "the lack of the subjective mens rea requirement and subsequent federal case law that required actual proof of intent to distribute when used as predicate offenses…." (ECF No. 14 at 13-14).

####      2.        Analysis

Prior to Herd's sentencing in February 2019, the Third Circuit explained that

> a defendant qualifies for a career-offender enhancement under the
> Guidelines if he or she "has at least two prior felony convictions of
> ... a controlled substance offense." U.S.S.G. § 4B1.1(a). A
> "controlled substance offense" is an offense that (1) is punishable
> by a term of imprisonment that exceeds one year and (2) "prohibits
> the manufacture, import, export, distribution, or dispensing of a
> controlled substance (or a counterfeit substance) or the possession
> of a controlled substance (or a counterfeit substance) with intent to
> manufacture, import, export, distribute, or dispense." *Id.* §
> 4B1.2(b). A state conviction cannot qualify as a "controlled
> substance offense" if its elements are broader than those listed in §
> 4B1.2(b). *See Mathis v. United States*, —— U.S. ——, 136 S.Ct.
> 2243, 2251, 195 L.Ed.2d 604 (2016) (holding, in the Armed Career
> Criminal Act ("ACCA") context, that "a state crime cannot qualify
> as ... [a] predicate if its elements are broader than those of a listed
> generic offense"); *see also United States v. Hinkle*, 832 F.3d 569,
> 574 (5th Cir. 2016) (applying *Mathis* to analysis of § 4B1.1).

*United States v. Glass*, 904 F.3d 319, 321–22 (3d Cir. 2018).

Thus, there is a legal framework that governs determination of whether a prior conviction

qualifies as a predicate offense under U.S.S.G. § 4B1.1.   *Id.*   First, one must identify the prior

statute[s] of conviction.   *U.S. v. Ramos*, 892 F.3d 599, 607 (3d Cir. 2018) ("we must begin our

categorical analysis by examining the text of [the] statute, . . . at the time of [the petitioner's

guilty plea.]"   Under the "categorical approach," courts must examine the text of the prior

statutes of conviction.   *Id.* at 608.   If it appears there is more than one offense described in the

statute, courts must determine whether the statute is divisible and requires analysis using the

"modified categorical approach."   *Id.*

> A determination of a statute's divisibility turns on the distinction
> between "means" and "elements." Elements are the constituent
> parts of a criminal offense that a jury must find beyond a
> reasonable doubt to convict; or, alternatively, that a defendant

12

> necessarily admits when pleading guilty. Means, on the other hand, are merely the factual ways that a criminal offense can be committed; they are "extraneous to the crime's legal requirements" and thus "need neither be found by a jury nor admitted by a defendant." A divisible statute sets out one or more elements in the alternative, most often using disjunctive language to list multiple, alternative criminal offenses. Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction. An indivisible statute, by comparison, sets forth a single set of elements that define a single crime, regardless of whether the statute lists separate factual means of satisfying a particular element. The modified categorical approach applies only to divisible statutes.

*Ramos*, 892 F.3d at 608–09.   If the statute is divisible because it criminalizes different conduct by setting forth different elements that must be proven beyond a reasonable doubt, the modified categorical approach must be employed by "consult[ing] certain extra-statutory materials for the limited purpose of identifying the offense of conviction."   *Id.* at 609.   "These materials must establish the offense of conviction with 'certainty.'"   *Id.* at 610 (quoting *United States v. Henderson*, 841 F.3d 623, 631-32 (3d Cir. 2016) (citing *Mathis*, 136 S. Ct. at 2257)).   Once the offense of conviction has been established by looking at underlying records such as the charging and plea documents, courts must examine the elements of the offense to determine whether it categorically qualifies as a predicate offense.   *Id.* at 610.   This requires determination of whether the offense conduct is a categorical match to the definition of the predicate offense.   *Id.*

For categorical comparison, the predicate "controlled substance offense" is defined in U.S.S.G. § 4B1.2(b):

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import,

13

export, distribute, or dispense.

Herd identifies N.J. Stat.§ 2C:35-5(a) and N.J. Stat. § 2C:35-7(a) as the New Jersey statutes of conviction for the predicate offenses described in his PSR, but he does not describe his specific offense conduct.   (ECF No. 7 at 38).   These statutes were not identified in Herd's PSR, the sentencing memoranda, the sentencing transcript, or by the Government in the answer to the amended § 2255 motion.   Herd maintains that the modified categorical approach is necessary to determine whether his prior state convictions qualified as controlled substance offenses, and that no one obtained the necessary underlying documents.

Although the Government maintains that Herd's prior convictions constituted controlled substance offenses under § 4B1.1,[5] the Government did not explain how it reached that conclusion under the analysis described by the Third Circuit in *Glass* and *Ramos*, *supra*.   The Government did not respond to Herd's argument that N.J.S. 2C:35-5(a) and N.J.S. 2C:35-7(a) are divisible statutes that require the modified categorical approach to determine whether Herd's convictions under these statutes constituted predicate controlled substance offenses.   Therefore, this Court will require the Government to submit a supplemental brief which responds to Herd's argument.   If the Government concedes that the prior statutes of conviction are divisible, it must produce the necessary documents to employ the modified categorical approach.   If the Government argues that the modified categorical approach is inapplicable, it must explain why the prior state statutes of conviction are a categorical match to controlled substance offenses

---

[5] *See* Answer, ECF No. 13 at 26 (arguing "given that Herd was, in fact, a career offender" his argument is meritless).   *See also* Answer, ECF No. 13 at 27 (arguing that, "[h]ere, Herd was not sentenced as a career offender because of an error Pappa made. Rather, he was sentenced as a career offender because he was one: where only two predicate convictions are necessary to qualify, he had four.")

under the career offender guideline.   Herd will be given the opportunity to reply to the Government's supplemental brief.

## III. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is **DENIED in part.**   This case shall remain open pending the Government's filing of a supplemental brief and Herd's reply thereto.   An appropriate order follows.


Date:   <u>**April 14, 2022**</u>

Hon. Susan D. Wigenton,
United States District Judge

15